Good morning, everyone. The first case on the call of the docket today is agenda number 5, number 124417, People of the State of Illinois ex rel. Lisa Madigan, appellant, Stateline Recycling, LLC, Appalese. Mr. Dozman, you may begin. I am Assistant Attorney General Aaron Dozman for the appellant. This interlocutory appeal is about a discovery order. And the issue is whether this Court's civil discovery rules and orders that are entered in compliance with those rules violate the prohibition on unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. This Court has already resolved that because in civil discovery, the boundary of an area that is protected from unreasonable search and seizure is guided by relevance. Reasonableness is a function of relevance. They go hand in hand. So long as information is relevant to a cause of action, it is constitutionally reasonable to disclose it in discovery, even when the government is a party in litigation. Civil discovery contains numerous protections for litigants in discovery. It is always overseen by a judge. It affords litigants notice and opportunity to respond to a discovery request before there is any compelled production. And when it comes to property, compelled access to property is only allowed when the property is the subject matter of the action. And the appellate court's decision to the contrary was unprecedented. It failed to recognize that this Court's discovery rules and the application of them necessarily satisfies a Fourth Amendment standard. No other rule or standard is necessary to further the purpose of the Fourth Amendment like the New York v. Berger test that the appellate court ultimately adopted. The rules contain more than sufficient protections than the Fourth Amendment requires, and that begins with Rule 137. Rule 137 requires that all pleadings be well-grounded in fact and have a good-faith basis in law before they're brought. This is also a fact-pleading jurisdiction. In addition to that, in civil discovery, inspections of property are limited if the property is the subject matter of the action. There is notice to the other side that a litigant wants to inspect a piece of evidence or property. The opposing side is given an opportunity to confer with the requesting party. And then before there is any compelled production of evidence or an inspection of property, a court becomes involved and determines whether that inspection or piece of evidence is relevant to the action. And because the opportunity is there to object to that request, the court can fashion the discovery order so that it's limited to just relevant information to the cause of action. And that's what happened in this case. The operative complaint contains specific allegations of an unpermitted landfill that was discovered by Illinois Environmental Protection Agency investigators. The case survived a motion to dismiss. After defeating that, we moved into asked in discovery if we could access the property to inspect it because it is the subject matter of the action. She denied access, which is her right to do. And after we couldn't resolve the dispute amicably, we went to the circuit court and asked the circuit court to compel access to the property because Rule 214a allows us access to property when it is the subject matter of the action. Reince had the opportunity to object. She raised no relevance objections at that time. She raised simply a complete bar to access to property. And then the circuit court granted us access because it was a relevant piece of information. It is the key piece of evidence in this environmental action. The property is the subject matter of the action. And Rule 214a plainly allows that. So that is both reasonable under the civil discovery rules and therefore reasonable under the Constitution. And the appellate court compounded this error by adding a test from New York v. Berger, which is used to evaluate the facial validity of regulatory schemes that authorize warrantless administrative searches of businesses. And that is completely inapplicable here because this is not a situation where a party is gaining access to evidence or property without judicial intervention. Warrantless regulatory schemes allow access by inspectors without first going to a judge and getting a warrant. At all times in civil discovery, before there is any compelled production of evidence or access to property, the party requesting the information has to go to a judge or first ask for consent and then go to a judge for permission to go on the land. And that is controlled by, one, relevance. And this Court has already said that it is reasonable to produce relevant information, constitutionally speaking. And the rules contain a host of other protections for litigants to make sure that the information is not privileged, to prevent abuse of the discovery process, and judicial oversight. Kagan. There is a question about the facts in our case. You have indicated, and I think maybe more clearly than you did in your brief, that you acknowledge the Fourth Amendment implications when a court orders discovery. And certainly for the last 25 years, since the Kunkel case, this Court has indicated that this is a search and the question is reasonableness, and that is a determination made by the Court, that the Court is the actor, the State actor in the Fourth Amendment issue. When the Court is making that kind of determination, the trial court, as to the reasonableness of the discovery request, should there be a different calculus when the requester is the government, is the State, versus a private party? No, Your Honor, because the rules already adequately protect against any arbitrary use of civil discovery. It gives the circuit court complete authority to limit the disclosure to relevant information, and we know that that is constitutionally reasonable. And it's really dependent on the other side opposing the request to raise objections to narrow the scope. Otherwise, we're not in possession of the evidence or not as familiar with the property in this case. And so we rely on the other side to say, well, I want to limit the scope to this area or this evidence or this time. That's really the burden on the opposing party to help guide the circuit court to know what is going to lead to the relevant disclosure here. The requesting party simply doesn't have the same information that the other side does. So the opportunity to object is critical. And that's not a feature of a warrant procedure under the Fourth Amendment. That is typically an ex parte proceeding where a government goes to seek a warrant supported by probable cause, and there's typically no time to object to the warrant. But here, everyone's on notice that the government or any private litigant wants to view a piece of evidence, and that is the time to negotiate it. The rules contemplate a variety of discovery situations, a variety of evidence, a variety of causes of action. But when it comes to property, the property has to be the subject matter of the action. That is the case here. It is the piece of relevant information in an environmental action. There is no evidence or there's only suspicion that there is some ulterior motive here by government actors. But in principle, that, of course, you can never abuse the discovery procedure to get something outside of what the rules provide or what warrants provide. And that there are just no facts to support any inference of that here. And the circuit court has a host of powers to deal with those types of abuses. Mr. Tosman, is it ever appropriate to subject a discovery order to Fourth Amendment analysis? And if so, under what circumstances? Well, civil discovery rules always satisfy the Fourth Amendment. The touchstone is reasonableness under the Fourth Amendment. And any discovery request that we make is guided by the rules. The rules satisfy the Fourth Amendment. It is the rules are underneath the Fourth Amendment standard. They fully comply. They more than comply with what's required under the Fourth Amendment. And so if we comply with the rules, we necessarily comply with this constitutional standard. And I think that's illustrated by the test the appellate court wanted to adopt, which, as we've illustrated, is not possible. It doesn't — it's for warrantless inspections. That's what that three-part test is about. This is not the same. We are not entering property without some kind of judicial intervention, a judge passing on the propriety of the discovery request. So that's why the rules themselves satisfy the Fourth Amendment. And the key is the relevance function. Reasonableness is a function of relevance. That's what this Court said in Kunkel v. Walton. And there it struck down a statute that allowed irrelevant information to be produced. And that's why it's limited here to just relevance. Justice Tice indicated that maybe the Court should use a different calculus because the government is involved. Shouldn't we be concerned that the government can impose criminal sanctions if there's a violation of the Act? Doesn't that reasonably provide more protection? Your Honor, I don't know what — the rules already offer a host of protections. And I haven't seen any proposed that would even apply. But you can't impose criminal sanctions if there's a violation, correct? Sure. That's true. If the — if criminal violations were discovered and a criminal action was brought, that would be a separate action. And it's a little bit of a false distinction to say that only the government can discover additional civil or criminal violations in discovery. A private litigant could just as easily happen upon additional causes of action. And — but if the government is going to — discovers any more violations and wants to bring criminal action, that is an entirely separate action, subject to its own procedures and its own protections. But there's no way to come up with an instance where relevant information can be withheld before knowing — you know, before disclosing it in discovery, whether there will be additional violations discovered. But there's no prohibition against you using what you discover in the civil action and the criminal action, correct? If it's — if it's discovered according to the rules, that is reasonable. There's nothing unreasonable about the discovery of any additional criminal violations. And there are — it's hard to speculate about what that situation might look like, but there's rules under criminal procedure to withhold or exclude evidence that's — improperly. So the rules already more than adequately provide all the protections a litigant would want against private parties or government parties in litigation. And they offer flexibility for a variety of circumstances, because the bottom line is reasonableness, and it's hard to come up with categorical — categorical reasons because each cause of action is different, each violation, each piece of property is unique. But so long as there's a judge overseeing the entire process, applying the civil discovery rules, the outcome will be reasonable. And there's a way to challenge the — Kagan. Wait, wait, wait. I want to kind of refocus this. It's not the State's request that is — I don't think this is what you're arguing. The State's request for discovery that is — implicates the Fourth Amendment. It's the court's action of ordering discovery that triggers the Fourth Amendment, correct? The State action, yeah, correct, Your Honor. It's the court action that brings this within the Constitution. And then the court can decide the breadth or the narrowing of the discovery order, and that's reviewable, right? Yes. The court always has final say. And that determination is reviewed within the confines, within the parameters of the rules, and can be appealed at an interlocutory appeal, just like here, to test the parameters of that under an abuse of discretion standard to determine whether that request fits within the rules. And that's typically how those interlocutory appeals are reviewed. They don't jump to a — some other constitutional standard first. The rules were crafted with the constitutional limits satisfied. Yes. If this Court has no further questions, I ask that it reverse the appellate court and affirm the circuit court. I'll yield my time. Thank you. Mr. Ruble. Thank you, Justice Breyer. Good morning, esteemed members of this august body, Closing Counsel. What we're dealing here — I'm sorry, I should cover this. What we are confronting here is not a simple, ordinary civil discovery case. The Fourth Amendment states that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated in no warrant shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized. This is a right that belongs to the people. And most importantly, it's a limitation on the power of the government. It does not say that it only applies in criminal cases or investigations. In fact, the historical context of this was that this amendment was crafted for the reviled general warrants and rigs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. I'm citing from Carpenter v. United States, U.S. Supreme Court, 573-373. Indeed, lawyer and patriot James Otis, deemed to be the — nearly by all — to be the most brilliant orator of the colonial Massachusetts during the 1760s, who was also one of the first and best-known Americans to defend the right of natural rights of Africans to condemn — and to condemn slavery, delivered a five-hour speech on this very subject in February of 1761, railing against the use of unrestricted rigs of assistance or general search warrants. In summary, his speech said, I will to my dying day oppose, with all powers and faculties God has given me, all such instruments of slavery. On the one hand, in villainy, oh, and the other is the rigs of assistance. It appears to me the worst instrument of arbitrary power and the most destructive of English liberty and fundamental principles of law that was found in any English law book. It is a power that places the liberty of every man at the hands of every petty officer. Not even the Supreme Court — I'm sorry. Today you are here to decide. He went on to say — or, I'm sorry, young John Adams said, as he would later write, every man in the crowded audience appeared to him to go away, as I did, ready to take arms against rigs of assistance. That's from the works of John Adams. According to John Adams, Otis's speech became the first scene of the first act in opposition to arbitrary claims of Great Britain. He said, then and there the child of independence was born. Today you are here to decide whether this child of independence is to die at the death of 1,000 cuts. Not even Supreme Court rules can supplant the limitations placed on the government by the Fourth Amendment. In order to maintain the respect for the law, the legal system, its institutions, the rights of the people must be respected. The State's argument in the trial court — Sotomayor, did you have a problem with our discovery rules, or is it with the action in this case in particular? Well, this case, unlike what the State said, has not already been decided. Kunkel does not decide this case, because in Kunkel, this Court expressly recognized it was private litigants. And it said this is not like the government coming after and seeking this information. But yet, this is something that I keep going back to. Yes. We're talking about the Fourth Amendment. Where is the governmental action that triggers the Fourth Amendment? The request by the State or the court's order that documents be turned over, that access to property be made? Justice Tice, I believe that it can come in several different places along the chain here. But in this specific instance, it is — it's in the court's ordering based upon no presentation. I mean, we're not dealing with a presentation of a verified complaint here. There was no presentation other than — and you heard this out of the State's mouth, that all they were looking to do was search this property. But that's not the case. If you read the order and look at it, they were also looking for an unrestrained search of a business building on the property. Did you object to the scope and the relevance of the discovery request? We did in a general sense, yes, but we were focused on whether or not the State had shown any need to do this. And part of the problem, Judge, is they're saying they didn't know what — it's a whole burden-shifting thing. And it's part of this bait-and-switch that they've set up here. They're saying that my client has the burden of showing that their search would be unreasonable at the trial court level when that's not what the Constitution imposes. The Constitution imposes a question of whether or not the State has met — and it's a very low hurdle. I mean, we're talking an administrative search here. But they wanted to basically ransack an entire — it's a construction trailer that was on the property, but to go through that and look for whatever they might find, and it has nothing to do with the environmental condition of the property, it might — So did you argue that the State's request was overbroad, that it — scope was beyond the relevance of this case? Did you make these kind of arguments at the trial court and say, this request should not be granted because — for all the reasons that you're stating here? Did you make that argument at the trial court so the trial court could perhaps narrow the request? Probably not directly to the judge. I know we made these discussions with the e-mail exchanges and other exchanges with the State. The issue is the State never showed — I mean, the condition of the contents of this trailer have nothing to do with the, you know, the environmental condition of the property. Something else that is really troubling here, they say that they did not have knowledge of the condition of the property. Well, my client obtained this property by a tax deed. So it wasn't like she had owned it or operated it. She got a tax deed to the property, and there was no prior public notice that this property was under any kind of investigation or suspicion. There was a judgment that was entered against the prior occupant, but not recorded in the chain of title that my client would have observed, supposedly shutting it down. And she had not dispossessed the occupiers under a writ of assistance at that time, which is what they call them in tax deed proceedings. So she has no knowledge of the contents of the building. She really — her knowledge of the property was that of somebody who saw overhead photographs of it, basically. And so it wasn't like she had any intimate knowledge of this that would be greater than the State. The State had already sent out investigators multiple times to know what this was. They had done unwarranted inspections before my client even came into possession of the property. So that's a red herring in this case for them, Mr. Gozeman, to get up here and argue that they didn't know what was going on with the property and that my client had superior knowledge. They know all too well that that's not the case. Counsel, does it make any difference what the nature of the business being conducted on the property? It can. It can. And that's another issue of whether or not — and that gets into the administrative warrant scheme, though. It's not in — it's not in the issue of whether or not civil discovery changes. To say that it's a highly regulated business shouldn't change the scheme of the civil discovery. That's certainly not part of your Supreme Court rules on civil discovery. But one of the things that we need to recognize, the context of this case is entirely different than any of the other civil discovery cases that have come up in any other court. Here, the plaintiff is the State of Illinois, and it is prosecuting a case for enforcement of environmental regulations where they're seeking $50,000 in fines and $10,000 a day in penalties. Now, before they started calling these things civil, when I went to law school, that would have been a criminal enforcement action of some sort. Putting it under this cloud of calling it civil because we craft the legislation to call it civil doesn't really turn it into a civil case. I mean, they're seeking fines and penalties, and it's only the government that can enforce this law. Nobody else has the right. And that was another argument they made. Well, if, you know, another litigant discovered something that was a violation of the crime during — a crime during discovery, that, you know, it would be treated the same way. No, it wouldn't, because no other litigant has the right to enforce the criminal law or to bring even environmental actions. This is — essentially, it's a sui generis in that sense, because it is only the State that can enforce these, and it is only the State that can prosecute these. So when they bring them, they are bringing them on behalf of the people of the State, seeking fines, and now they're circumventing the Fourth Amendment, which admittedly is a low hurdle, but they didn't even meet that for the Fourth Amendment for administrative searches that have long been recognized by C.N. Camara in the Supreme Court, that they circumvent that and say, we are entitled to this as civil discovery because we're just like any other civil litigant. Well, I say that's bait and switch. They're not like any other civil litigant in this, for lots of reasons. When they went into the trial court, they said, look, this is a highly regulated business, and it's important that we do this, and we've got these statutory rights that allow us to do these things without warrants, and just to go in there whenever we want, and I'm sure you've seen their argument that says that they waive that in the appellate court, which is all fine and dandy, but it doesn't change what happened in the trial court. So you seem to be saying that because it's the government, they should be held to a higher standard. You seem to be saying that. Absolutely, Judge. But you seem to be saying to me, it isn't so much there's a problem with our discovery rules, the problem is with the fact that the government was involved and they're a different kind of player than in most civil litigations. Is that what you're saying, or am I missing the point? No. I think you're hitting it directly on the head, the nail, Justice Garment. The problem here is, it is not the fact that civil litigants can do this, although the Jurisdict case, which I think is really an outstanding case, and you're going to run into that issue at some point in time if it's not on your docket already, but that was a request to go through a computer and to look at all of the SI and to clone that drive on a forensic clone, which, you know, that's, they say, they're arguing that that isn't similar to this, but of course it is. When you go into a building, the Jurisdict case, that's like going through everybody's all of their mail, all of their photographs, anything else, and they equated it to being much like when you go through somebody's phone or their computer going through their house or ransacking it, on that same part. In fact, just because there wasn't a computer, in fact, I think there might have been some electronic devices in the place inside the building, but going into the building and going through file cabinets and desks and things of that nature is the exact same thing as Jurisdict. Jurisdict put limitations there. They said a request to do this, you have to show us, show us by reasonable and credible evidence that it's reasonable. You've got to show us something. Jurisdict talked about, we didn't get any affidavits. This is Second District. We didn't get any affidavits showing that this was necessary and that you needed to go through everything the person had in order to do that. And I think that is the standard that should be applied in this case, especially where the Standard you're looking for. Are you saying that the Court must deny every civil discovery request by the government? No. No, no, no, no, no, no. That's not at all what I'm saying.  Wait, wait, wait. So you're not saying that every time the government asks for discovery under civil discovery rules, the Court must deny it. You seem to be saying that the Court, when it makes a determination on reasonableness, should have a different analysis, the hearing should be different, the requirements should be different if the party who's making the discovery request is the government. Certainly. And I would say that you could even go narrower than that when it's in a civil enforcement proceeding that only the government can pursue where they're seeking fines or penalties. I mean, that sounds – take the label civil off of it. It sounds like a criminal proceeding. And the Fourth Amendment should apply in that circumstance. I mean, if we're looking at making this – and you should – making it a narrow decision, that's it. And they should have to meet at least the low threshold for administrative searches presenting some type of evidence other than arguing – I mean, they argued that the property was the core issue in the action. I believe they're correct that the condition of the property probably is that building certainly wasn't. And they're throwing in the fact that they have the right by the State legislature to ignore the Fourth Amendment, which is essentially what that statute says at 4-5 of the Environmental Protection Act, that they can make these warrantless searches on the property without any type of showing, without any evidence of reasonableness. The court should have to make that inquiry. Show us why this is reasonable. Not to just assert that it is. Not to just simply say, we're the government, we've got these rights, and therefore, we have a right to whatever we want. They should have required – the court should have required a minimal factual showing. One of the other big problems that we've got, and we've heard it from the State here, and this is what I call a bit of a bait-and-switch. They came in and they said all of that, but now they're saying the burden to be protected under the Fourth Amendment should be shifted onto the person whose property is being searched. And that, I think, is a serious, serious problem here. They argued, well, the defendant in this case, Taxpayer, had to prove or essentially convince the court that it wasn't reasonable in the first instance, which, Justice Tyson, gets back to your question of do you have to raise this in the trial court, the scope. And they're saying that the defendant has to show that it's not reasonable. That's not Fourth – nowhere in the Fourth Amendment are you going to find that, except when somebody's coming back later to try and quash a warrant that the court entered. It's just not going to come up. That is a horrendous trick of hand there, where they're trying to shift the burden The fact that there was a subsequent warrant issue shows that it was not an unreasonable – it's not really before your court, but it's not an unreasonable procedure to require them to submit an affidavit when they want to get this kind of access in a civil proceeding. To summarize, a search and seizure, which is what we're talking about, the Fourth Amendment or Article I, Section 6 of the State Constitution, which is even broader, is a limitation on the government. That means the State of Illinois in this case. It is a right, a fundamental right, which belongs to the people, which in this case means Ms. or Ms. Rents. There are no exceptions to unreasonable searches. When they go before a court and they get an order, compelling contempt, that constitutes a warrant by any other terms. The nature of this action, as civil or criminal, doesn't change this analysis. The government brought the suit. Only the government could bring the suit. The government seeks $50,000 for each and every violation and $10,000 a day. The government provided no affidavits or evidence for their broad search, including an entire building on the fenced-in premises. And both the Fourth – I'm sorry. I see my time. Thank you. Both the Fourth Amendment and the Article I, Section 6 require some evidentiary showing by the government where it seeks to search in an enforcement action. They only have the authority and power to bring. Thank you. Thank you. Thank you. Mr. Tozman? Thank you. A few points. I want to say, first, there is a citizen suit provision for violations of the IEPA, or the Environmental Protection Act. So private groups can bring these actions. The process is a little bit different, but really immaterial. Secondly, the amount of fines that the Act provides, it's also immaterial, because in private litigation, damages can also be very substantial. That doesn't convert a civil action into a criminal action. They both have different standards, mental knowledge, requisites, stuff like that. Also, I think the core of the argument is that – of Srinath's argument is that there needs to be – that somehow the warrant and probable cause requirement isn't satisfied under the rules. But that's not true, because that is more than satisfied by – there has to be a pleading, which is subject to sanctions if it is not brought – well-grounded in fact and good faith basis in law. And there's a judge always determining what is reasonable and relevant in discovery. And there is the opportunity to respond, and that is critical, because that is not a feature of the text of the Fourth Amendment and its warrant procedure. The warrant procedure is typically an ex parte proceeding, where the other side does not get that opportunity. And this appeal is about the discovery order. And discovery is for attorneys. Our attorneys have not been on the property. No government actor has been on the property without a court order in this case. The agency got a warrant before it went on the property. After Mrs. Raines objected, we went and got a warrant. That satisfies the Fourth Amendment. Our attorneys have yet to go onto the property under Rule 214 without permission. That demonstrates the reasonableness of this process that protects litigants. There is review of those orders. If this Court has no further questions, I set you reverse the appellate court and affirm the circuit court's discovery order. Thank you. Thank you. Case number 124417, People v. State of Illinois v. State Line Recycling, is taken under advisement as Agenda No. 5. Thank you, Mr. Dozman, and thank you, Mr. Globe, for your arguments this morning.